**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ISAAC KALULE,

     Petitioner,

  v.

ALBERTO R. GONZALES, Attorney General,

     Respondent.

No. 05-9566
(No. A95 553 314)
(Petition for Review)

**ORDER AND JUDGMENT** [*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

Isaac Kalule petitions for review of the decision of the Board of

Immigration Appeals (BIA) dismissing his appeal and affirming the decision by

the Immigration Judge (IJ) to deny asylum, withholding of removal under the

Immigration and Nationality Act, and withholding of removal under the United

Nations Convention Against Torture (CAT). Mr. Kalule contends that the BIA

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

erred by concluding that petitioner was statutorily barred from filing his asylum claim; by affirming the IJ's adverse credibility findings; and by failing to make separate credibility findings for his CAT claim. The petition for review is dismissed in part and denied in part.

Asylum claim

An asylum application must be "filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The BIA affirmed the IJ's determination that Mr. Kalule failed to file a timely asylum application and that Mr. Kalule had not demonstrated changed or extraordinary circumstances excusing his delay. Generally, courts do not have jurisdiction to review a timeliness determination made under section 1158(a)(2). *See id.* § 1158(a)(3). After the REAL ID Act was enacted in May 2005, courts were given limited jurisdiction to review a "constitutional claim or question of law" related to the timeliness determination. *Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). "However, challenges directed solely at the agency's discretionary and factual determinations remain outside the scope of judicial review." *Id.* Mr. Kalule's petition for review does not present a constitutional claim or question of law. His argument focuses on the alleged factual circumstances involved in the delayed filing of his asylum application and the IJ's discretionary decision that there was no good cause for the delayed filing. We do not have jurisdiction to review this type of challenge. *See id.*

<u>Withholding of Removal claim</u>

The IJ found that Mr. Kalule did not meet his burden to provide believable, consistent, and sufficiently detailed testimony to establish his eligibility for asylum or withholding of removal. The BIA affirmed the IJ's adverse credibility findings in a single-member brief order. Because the BIA issued an independent decision with a substantive discussion of the adverse credibility finding, our review is limited to the BIA's decision and we will not extend our review to the IJ's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). As a result, we will not consider Mr. Kalule's argument that the IJ erred in his factual determinations, *see* Pet. Br. at 18-20.

Mr. Kalule testified that his father, Ramathan Muwonge, was the campaign manager for Kiiza Besigye, a candidate opposing President Museveni. He testified that he had two brothers, Kawooya James and Kalungi Mark, and that his father and both brothers were arrested. He testified that his brother Kalungi Mark was released a few days later, but was arrested again and sometime later he was found dead. The sole basis for his claim of persecution is that his father had disappeared and his brother was killed.

The BIA gave specific, cogent reasons for finding that the record supported the IJ's adverse credibility determination and that Mr. Kalule had not met his burden of establishing a clear probability of persecution. *See Elzour v. Ashcroft*, 378 F.3d 1143, 1152 (10th Cir. 2004). The BIA noted that it had reviewed the

-3-

documents submitted by Mr. Kalule, as well as the Department of State's, *Uganda - Country Reports on Human Rights Practices (2001)* (the 2001 Country Reports), and the Human Rights Watch for 2001. The BIA noted that these documents, in addition to a British Broadcasting Corporation (BBC) Summary of World Broadcasts, dated February 23, 2001, which was submitted by Mr. Kalule, show that Mr. Muwonge was kidnapped on February 12, 2001. The documents further showed that Mr. Muwonge's two sons were also kidnapped, although one of the reports then identified the two individuals as Muwonge's son, Siraje Wamara, and Kaamu Benjamin, a visitor. The BIA then noted, "[n]either of the names of his 'brothers' as testified to by the respondent, is 'Siraje Wamara.'" Admin. R. at 4. The documents report that all three men were released the next day. The BIA went on to conclude:

> Because the sole basis of the respondent's claim is that his "father," Ramathan Muwonge, "was disappeared" and presumed dead, and that his "brother," Kalungi Mark, was killed and found "decomposing . . . in a thicket", these reports, taken with the BBC summary, directly contradict the respondent's testimony.

*Id.* (citations omitted). The BIA then explained that "[t]he 2001 Country Reports states, 'In December, Muwonge sued the Government for wrongful detention and assault . . . ,'clearly evidencing that Muwonge was alive and well in Uganda in December 2001." *Id.* Finally, the BIA pointed out that:

> With regards to the claim that the respondent's family fled Uganda for Kenya because of fear of the kidnappers and the government, both the 2001 Country Reports and [Human Rights Watch] report

that on March 1, 2001, three soldiers were sentenced to 3 months in prison after pleading guilty for receiving Muwonge "without clear instructions from the relevant authorities."

*Id.* We conclude that substantial evidence in the record supports the BIA's decision. *See Elzour*, 378 F.3d at 1150.

CAT claim

Mr. Kalule contends that the IJ was required to make separate credibility findings regarding Mr. Kalule's CAT claim. We disagree. In *Niang v. Gonzales*, 422 F.3d 1187, 1202 (10th Cir. 2005), we concluded that the IJ's adverse credibility finding controlled the court's review of the CAT claim. We noted, "[o]nce one discredits [petitioner's] description of her family's attack on her and the threats of future harm from her family, one could rationally decide that she had failed to show that if she returned to Senegal she would be killed or otherwise subjected to torture." *Id.*

Mr. Kalule testified that he was not politically active. Admin. R. at 179. He testified that he was afraid to return to Uganda due to the alleged disappearance of his father and the murder of his brother. *Id.* The IJ and the BIA found that Mr. Kalule's testimony was not credible as to his identity and his relationship to Ramathan Muwonge, his purported father and Mark Kalungi, his purported brother. The BIA also noted that the record evidence showed that Mr. Muwonge had not disappeared as Mr. Kalule had testified because the 2001 Country Reports indicated that Mr. Muwonge sued the government in December

2001–six months after the alleged disappearance. It was therefore reasonable for the BIA to affirm the IJ's conclusion that Mr. Kalule had not met his burden of showing that it was more likely than not that he would be tortured if he returned to Uganda.

The petition for review is DISMISSED in part for lack of jurisdiction and DENIED in part.

Entered for the Court

John C. Porfilio
Circuit Judge